GREENBERG TRAURIG, LLP
Eric Rowen (SBN 106234)
*Eric.Rowen@gtlaw.com*
Matthew R. Gershman (SBN 253031)
*gershmanm@gtlaw.com*
Sheri Kanesaka (SBN 240053)
*Sheri.Kanesaka@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Plaintiff
THE RYZMAN FOUNDATION INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE RYZMAN FOUNDATION INC., a California non-profit corporation,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>NANA MUZA aka NANA SANDLIN aka NANA MUZASHVILI, an individual; ALEXANDER SANDLIN, an individual; MICHAEL J. FINK aka MICHAEL FINK aka TOD JOSEPH SERVIS, an individual; and DOES 1 through 100,<br><br>　　　　Defendants.<br><br>83 NY HOLDING LLC, a New York limited liability company, as a nominal defendant only. | CASE NO.  3:25-cv-09653-MMC<br><br>Assigned to Judge Maxine M. Chesney<br><br>**[AMENDED PROPOSED] PRELIMINARY INJUNCTION** |

Pending before the Court is the Order to Show Cause for Preliminary Injunction ("OSC") pursuant to the temporary restraining order ("TRO") (ECF 14) granted with regard to Plaintiff The Ryzman Foundation, Inc.'s ("Ryzman" or "Plaintiff") ex parte motion for temporary restraining order and order to show cause re: preliminary injunction, and order for expedited discovery ("Motion") filed on November 21, 2025 (ECF 12). Plaintiff filed a supplemental brief and declarations on December 8, 2025. Upon consideration of the parties' submissions, arguments of counsel, and the case file, the Court hereby enters the preliminary injunction and extends the TRO as set forth herein.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The evidence of record demonstrates the following facts that support issuing the preliminary injunction.

Defendants Nana Muza aka Nana Sandlin aka Nana Muzashvili ("Muza"), Alexander Sandlin ("Sandlin"), and Doe Defendants 1 through 100 ("Doe Defendants"), obtained a $7.5 million loan from Ryzman by using the LLC's name as the borrower (the "Loan"). Defendant Michael J. Fink aka Michael Fink aka Tod Joseph Servis ("Fink") assisted Defendants Muza, Sandlin, and the Doe Defendants in obtaining the Loan.

To obtain that loan, in November 2024, and again later in February 2025, Defendant Muza, with the help of Defendants Sandlin, Fink, and/or the Doe Defendants, submitted a loan application ("Loan Application") signed by Muza to Logan Investments aka Logan Mortgage, Inc. ("Logan"). (*See* ECF 12-3 [Declaration of Ron Sentchuk filed in support of Motion ("Sentchuk Decl."), ¶¶ 4-5 [Exs. 1-3]].) Logan was the loan broker. (*See id.*) On the Loan Application (submitted in November 2024 and an updated one in February 2025), Defendant Muza represented she is the managing member of the LLC. (*Id.* at ¶ 6.) Thus, Defendant Muza represented she had the authority to obtain the Loan on behalf of the LLC and had the authority to pledge—as collateral to secure the Loan—the LLC's real property consisting of vacant land located at 75 Isabella Ave., Atherton, CA 94027 (the "Property"). (*See id.*) Defendant Muza also provided an executed Certification of Beneficial Owners of Legal Entity Customers, representing that she was an executive officer or senior manager (e.g., managing member) of the LLC. (*Id.* at ¶ 8 [Ex. 5].) Defendant Muza also provided copies of her New York Driver's license and U.S. Passport, identifying her country of origin as Georgia. (*Id.* at ¶ 10 [Ex. 7].)

As part of the loan application process, Defendant Muza also provided a blank check for a Bank of America account no. xxxxxxxx3581, which account was opened in the name of the LLC but actually controlled by Muza and/or Sandlin (the "Bank of America Account"). (*See* ECF 12-3 [Sentchuk Decl. ¶ 7 [Ex. 4].) Later, Defendant Muza also provided Borrower Wiring Instructions to escrow dated February 4, 2025, that identified the Bank of America Account as an account in the name of the LLC. (*Id.* at ¶ 9 [Ex. 6]; *see also*, ECF 12-5 [Declaration of Michael Kendrick filed in support of Motion ("Kenrick Decl.") ¶ 4 [Ex. 15]].) The escrow company was Landmark Escrow, Inc. ("Landmark"), a California entity. (ECF 12-5 [Kendrick Decl. ¶ 1].)

Defendant Muza also represented that the Loan was to build a single-family residence on the Property. (*See* ECF 12-3 [Sentchuk Decl. ¶ 5 [Exs. 2-3]].) On November 27, 2024, Defendant Sandlin emailed Logan purported drawings for the intended residence to be constructed on the Property. (*Id.* at ¶ 14.) In addition, Defendant Muza executed a Certificate of Business Purpose of Loan, certifying the Loan was to all be used for construction on the property. (*Id.* at ¶ 19 [Ex. 12].) Defendant Muza also submitted a handwritten letter in which she stated that the intended use of the loan funds was to construct a "single-family home", including site preparation, foundation and structural work, and for materials and labor for construction. (*Id.* at ¶ 18 [Ex. 11].)

On January 13, 2025, Defendant Sandlin provided Logan with an Operating Agreement purportedly for the LLC that identified Defendant Muza as the sole member of the LLC. (*Id.* at ¶ 15 [Ex. 8].) Defendants Muza, Sandlin, and/or Doe Defendants obtained a copy of a Certificate of Status of the LLC from the State of New York, and, on or about January 15, 2025, registered the LLC with the California Secretary of State via the California Secretary of State's website and online filing portal. (*Id.* at ¶¶ 16-18 [Ex. 9].) Plaintiff is informed and believes that Mr. Fink assisted in obtaining a copy of a Certificate of Status of the LLC. (*Id.*) Likewise, on the same day, Defendants Muza, Sandlin, and/or Doe Defendants submitted a "Statement of Information" for the LLC via the California Secretary of State's website and online filing portal, reflecting Defendant Muza as a "manager or member" of the LLC. (*Id.* at ¶ 17 [Ex. 9].) Plaintiff is informed and believes that Mr. Fink assisted in filing the Statement of Information. (*Id.*)

During the loan application process, Defendant Sandlin claimed that Defendant Muza speaks Russian and purportedly speaks very little English. (*Id.* at ¶ 20.) As a result, Logan had to have the loan

documents translated in Russian for Muza to review. (*Id.*) The Loan Application and documents and representations made and provided by Defendants Muza, Sandlin, were provided to Ryzman. On information and belief Mr. Fink assisted Defendants Muza, and Sandling with the loan application and documents and representations. (*Id.* at ¶ 21.) Defendants Muza and Sandlin were aware that their documentation and representations would be relied upon by the lender, and that Logan was primarily focused on acting as the loan broker and finding the lender. (*Id.*)

Ryzman relied on the documentation and representations in agreeing to fund the Loan. (*See* ECF 12-8 [Declaration of Brian Dror in support of Motion ("Ryzman Decl.") ¶ 4].)

On February 21, 2025, Defendant Muza, purporting to act on behalf of the LLC, executed a promissory note secured by deed of trust dated February 4, 2025 ("Note"), to borrow the Loan from Ryzman. (See ECF 12-3 [Sentchuk Decl. ¶ 22 [Ex. 13]].) Pursuant to the terms of the Note, monthly payments of principal and interest totaling $88,865.38 were due starting April 1, 2025, with the Loan balance and other amounts due in full on September 1, 2026. (*Id.*)

In addition, on February 21, 2025, to secure repayment of the Note, Defendant Muza, purporting to act on behalf of the LLC, executed a deed of trust, security agreement, assignment of leases and rents and fixture filing ("Deed of Trust") (together with the Note and with all other loan documents, the "Loan Documents"). (*Id.* at ¶ 23 [Ex. 14].) The Deed of Trust was recorded against title to the Property on March 3, 2025, as document #2025-009441. (*Id.*)

On or about February 28, 2025, Ryzman funded a total of $7,500,000 to Commonwealth. (*See* ECF 12-8 [Ryzman Decl. ¶ 7].) On March 4, 2025, escrow disbursed $7,094,961.00 of the $7,500,000 borrowed under the Loan ("Loan Proceeds") to the Bank of America Account. (*See* ECF 12-5 [Kendrick Decl., ¶¶ 5-6 [Ex. 16]].) Defendants Muza and the LLC failed to make any payments due under the Loan, including the first payment due April 1, 2025, and the Loan went into default. (See ECF 12-8 [Ryzman Decl., ¶¶ 9-10]; ECF 12-3 [Sentchuk Decl. ¶ 25].)

Shortly before filing this lawsuit, the LLC's attorney contacted Ryzman's title company to advise that the LLC did not authorize any loan relating to the Property, that Defendant Muza is not and has never been the managing member of the LLC, had no affiliation with the LLC, and had no authority to obtain the

1  Loan, execute the Loan Documents, or pledge the Property as collateral for the repayment of the Loan.
2  (*See* ECF 12-7 [Declaration of David Neal filed in support of Motion ("Neal Decl."), ¶ 6].)

3  Ryzman's loan broker (Logan) attempted to contact Defendants Muza and Sandlin via the phone numbers and emails provided by them during the loan application process, but the email to Sandlin resulted in a bounce back, and they both failed to respond to the numerous attempts to reach them. (*See* ECF 12-3 [Sentchuk Decl. ¶¶ 26-27].) Moreover, the business website they provided during the loan application process is no longer available or connected. (*Id.* at ¶ 28.) The Loan Proceeds have been or likely are in the process of being dissipated.

On November 7, 2025, Ryzman filed a complaint, asserting counts for (1) fraudulent transfer, (2) constructive fraudulent transfer, (3) unjust enrichment, and (4) false promise. (ECF 1.)

On November 25, 2025, the Court granted the Motion and issued the OSC and TRO without prior notice to Defendants. The TRO provided, among other things: (a) Pending the December 5, 2025, hearing, defendants, together with their respective agents, servants, employees, and attorneys, as well as all other persons who are in active concert or participation with any of them, are hereby temporarily restrained and enjoined from charging, transferring, moving, using, pledging, or spending any funds from the Bank of America Account or any of the loan proceeds wherever else they may be located or maintained; (b) Pending the December 5, 2025, hearing, the Bank of America Account is frozen, such that no monies, charges, debits, pledges, and/or transfers may be made to or from this account by any person or entity; (c) Ryzman may conduct the expedited discovery requested in its above-discussed motion; and (d) the TRO expires on December 9, 2025.

No written opposition was filed in response to the OSC. Ryzman timely responded to the OSC in support of the preliminary injunction ("Response") (ECF 16.) As set forth in the Response, Ryzman timely served defendant Michael J. Fink aka Michael Fink aka Tod Joseph Servis ("Fink") with the OSC/TRO, Cover Sheet, Complaint, Issued Summons, Certificate of Interested Parties, Initial Case Management Scheduling Order with ADR deadlines (ECF 5), Consent/Declination to Proceed Before a US Magistrate Judge, Order Reassigning Case, Case Management Scheduling Order (ECF 10), Order Directing Plaintiff to Submit Courtesy Copy of Complaint, the Motion and all papers in support, and Ryzman's Rule 7.1

Disclosure (collectively, the "Service Documents"), on November 26, 2025, at 11:41 a.m. PST. (*See* ECF 16-1 [Declaration of Sheri Kanesaka in support of response ("Kanesaka Response Decl."), ¶ 4:23-24].)

Service of the Service Documents was made on defendant Nana Muza aka Nana Sandlin aka Nana Muzashvili ("Muza") via email at muzanana1965@gmail.com and nana.muza@yahoo.com. (*See* ECF 16-1 [Kanesaka Response Decl., ¶ 7:1-12]; ECF 22-1 [Declaration of Sheri Kanesaka in support of Plaintiff's supplemental brief ("12/8 Kanesaka Decl."), ¶¶ 2-3].) Ryzman did not receive any bounce back or any emails returned as undeliverable for these two email addresses. (*See* ECF 16-1 [Kanesaka Response Decl., ¶¶ 7:1-12, 8-9]; ECF 22-1 [12/8 Kanesaka Decl., ¶¶ 3-4].) See <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1016 (9th Cir. 2002); <u>Future Motion, Inc. v. Doe</u>, No. 21-CV-03022-JSC, 2021 WL 3052594, at *2 (N.D. Cal. July 20, 2021); <u>Goes Int'l, AB v. Dodur Ltd.</u>, No. 14-CV-5666 LB, 2015 WL 1743393, at *3 (N.D. Cal. Apr. 16, 2015).

Service of the Service Documents was attempted *but not effectuated* on defendant Alexander Sandlin ("Sandlin") by a private investigator hired by Ryzman on November 26, 28, and 29, 2025, and documents were posted to the door at 2662 Ocean Avenue, Apartment F3, Brooklyn, New York 10022. (ECF 16-1 [Kanesaka Response Decl. ¶ 4 [Exs. A and B].) Ryzman further overnighted the Service Documents to three different addresses provided by Muza and/or Sandlin in the loan transaction that gave rise to this case, *none of which have been shown to be valid.* (*Id.* [Kanesaka Response Decl. ~~¶ 5].~~ ¶¶ 5, 6]; ECF 22 at 3:14-20; ECF 30 ¶ 6.)

Regarding the LLC, the LLC waived service as set forth in the Waiver of Service (ECF 18). (*See also*, ECF 16-1 [Kanesaka Response Decl. ¶ 3].) Copies of the TRO and Motion, and other documents, were emailed to the LLC's attorney. (*Id.*)

At the hearing on the OSC on December 5, 2025, at 9:00 a.m., Sheri Kanesaka of Greenberg Traurig LLP appeared on behalf of Ryzman; Danielle Cummins of McDermott Will & Schulte appeared on behalf of nominal defendant 83 NY Holdings LLC (the "LLC"); and Kathryn Diemer of Diemer & Wei, LLP, was allowed at the hearing and without prior notice to appear remotely on behalf of Fink. Ms. Diemer orally objected to the entry of a preliminary injunction to the extent it included Fink. Ms. Diemer provided no evidence in support of her arguments.

## II.   LEGAL DISCUSSION AND PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

1  that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities
2  tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc.,
3  555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right."
4  Id. at 24.

5    Pursuant to Federal Rule of Civil Procedure 64, "[a]t the commencement of and throughout an
6  action, every remedy is available that, under the law of the state where the court is located, provides for
7  seizing a person or property to secure satisfaction of the potential judgment." Here, a California provisional
8  remedy for freezing assets also exists in the Uniform Voidable Transactions Act ("UVTA"). Specifically,
9  California Civil Code section 3439.07(a) states: "In an action for relief against a transfer or obligation
10 under this chapter, a creditor . . . may obtain . . . [a]n injunction against further disposition by the debtor or
11 a transferee, or both, of the asset transferred or other property of the transferee." Id.; see also PGA W.
12 Residential Assn., Inc. v. Hulven Internat., Inc., 14 Cal. App. 5th 156, 174 (2017), as modified (Aug. 23,
13 2017) (holding that a claim against the defendant for creating a sham corporation to fraudulently insulate
14 property equity from creditors through a deed of trust was the type of fraudulent transfer claim providing
15 for a preliminary injunction under the UVTA).

16   A preliminary injunction to freeze assets also is available where the suit seeks equitable relief. See
17 Johnson v. Couturier, 572 F.3d 1067, 1083-84 (9th Cir. 2009) (allowing injunction to prevent defendant
18 from transferring assets); see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d
19 878, 881, 883 (9th Cir. 2003) (upholding grant of asset-freezing preliminary injunction based on unjust
20 enrichment claim); Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 559 (9th Cir. 1992). In that
21 circumstance, the "party seeking an asset freeze must show a likelihood of dissipation of the claimed assets,
22 or other inability to recover monetary damages, if relief is not granted." Johnson, 572 F.3d at 1085.

23   In light of the factual detail offered in support of the preliminary injunction request, the Court finds
24 Ryzman has shown a likelihood of success on the merits, a likelihood of irreparable harm absent
25 preliminary relief, the balance of equities tips in favor of Ryzman, and such relief is in the public interest.

26   As to the matter of security, see Fed. R. Civ. P. 65(c), the Court has discretion to fix the amount of
27 a bond, or—particularly when, as here, the balance of potential hardships "weighs overwhelmingly in favor
28 of the party seeking the injunction"—to not require a bond. Elliott v. Kiesewetter, 98 F.3d 47, 60 (3rd Cir.

1996); see also Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (no or nominal bond where there was no realistic likelihood of harm to defendant from enjoining its conduct); Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972) (strong likelihood of success on the merits warrants a finding that no bond is needed). Here, there is no realistic likelihood of harm to Defendants if their ability to dissipate or use funds in the Bank of America Account is provisionally enjoined. Accordingly, Plaintiff is not required to post security for this preliminary injunction.

Therefore, the Court hereby ORDERS preliminary injunctive relief, as follows:

1. The Bank of America Account shall be (and remain) frozen, such that no monies, charges, debits, pledges, and/or transfers may be made to or from this account by any person or entity.

2. Defendants Nana Muza aka Nana Sandlin aka Nana Muzashvili and Michael J. Fink aka Michael Fink aka Tod Joseph Servis, together with their respective agents, servants, employees, and attorneys, as well as all other persons who are in active concert or participation with any of them, are restrained and enjoined from charging, transferring, moving, using, pledging, or spending any funds from the Bank of America Account or any of the loan proceeds wherever else they may be located or maintained.

3. The TRO is extended only as to defendant Alexander Sandlin until such time as Plaintiff can serve Sandlin.

**IT IS SO ORDERED.**

Dated: December 19, 2025        By: _____
                                    MAXINE M. CHESNEY
                                    United States District Judge